PD-0206-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/1/2015 6:04:53 PM
Accepted 4/2/2015 1:12:30 PM
ABEL ACOSTA
CLERK

**PD-0206-15**

## COURT OF CRIMINAL APPEALS OF TEXAS

**JAMIE ALBERTO IBARRA,**
*Appellant,*

**vs.**

**THE STATE OF TEXAS,**
*Appellee.*

On Petition for Discretionary Review from the Fourteenth Court of Appeals in Cause No. 14-13-00337-CR, affirming the conviction in Cause No. 1287084, In the 174th District Court of Harris County, Texas

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

April 2, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**BOB WICOFF**
Assistant Public Defender
Harris County, Texas
TBN 21422700
1201 Franklin, 13th floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
bwicoff@pdo.hctx.net

Counsel for Appellant

**IDENTITY OF JUDGE, PARTIES AND COUNSEL**

Trial Court Judge:                                       Hon. Ruben Guerrero
                                                        174th District Court
                                                        Harris County, Texas
                                                        1201 Franklin Street, 19th floor
                                                        Houston, Texas 77002


Parties to the Judgment:                                Jamie Alberto Ibarra [1]
                                                        The State of Texas


Names and addresses of trial counsel (State):           Gretchen Flader
                                                        Claire Morneau
                                                        Assistant District Attorneys
                                                        Harris County, Texas
                                                        1201 Franklin Street, 6th floor
                                                        Houston, Texas 77002


Name and address of trial counsel (Defense):            Michael Slider
                                                        Attorney at Law
                                                        1314 Texas Avenue, Suite 1200
                                                        Houston, Texas 77002


Counsel on appeal for the State of Texas:               Carly Dessauer
                                                        Assistant District Attorney
                                                        Harris County, Texas
                                                        1201 Franklin Street, 6th floor
                                                        Houston, Texas 77002


Counsel on appeal for the Appellant:                    Bob Wicoff
                                                        Assistant Public Defender
                                                        Harris County, Texas
                                                        1201 Franklin Street, 13th floor
                                                        Houston, Texas 77002

---

[1] Although the Appellant's name is listed as "Jamie" on the indictment and in the judgment, his *pro se* motions reveal that his name is "Jaime."

i

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Identity of Judge, Parties and Counsel: | i |
| Table of Contents: | ii |
| Index of Authorities: | iv |
| Statement Regarding Oral Argument: | v |
| Statement of the Case: | v |
| Statement of Procedural History: | v |
| Grounds for Review: | 1 |

Ground for Review One

Eight months before trial, the Appellant requested through two written *pro se* motions that his retained attorney be dismissed and that the trial court "appoint the defendant a public defender." In light of such actions by the Appellant, did the Fourteenth Court of Appeals err in holding that the Appellant failed to request a determination of his indigency?

Ground for Review Two

Under what circumstances, if any, is a trial court required to make an inquiry into a defendant's indigency?

Ground for Review Three

Did the Fourteenth Court of Appeals err in holding that the trial court's refusal to inquire into the Appellant's indigency did not deprive the Appellant his counsel of choice under the Texas and federal constitutions?

| Argument Under Grounds for Review: | 2 |
| Prayer for Relief: | 13 |
| Certificate of Service: | 13 |

# TABLE OF CONTENTS

**PAGE**

Certificate of Compliance:     14

Appendix (*Ibarra v. State*):     appendix

# INDEX OF AUTHORITIES

**PAGE**

## Cases

*Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005) ..................................................... 11

*Ibarra v. State*, No. 14-13-00337-CR, 2015 WL 293115............................................... *passim*
   (Tex. App.-Houston [14th Dist.] Jan. 22, 2015, no pet. h.)

*Robinson v. State*, 240 S.W.3d 919 (Tex. Crim. App. 2007)................................................. 10

*U.S. v. Mason,* 2012 WL 2680748 (5th Cir. 2012)(unpublished, per curiam)..................... 9

*Wheat v. U.S.,* 486 U.S. 153 (1988) ...................................................................................... 12

## Statutes and Rules

Tex. Penal Code Ann., sec. 12.42(d)……………………………………………… v

Tex. Penal Code Ann., sec. 22.02(a)(2) ..……….………………………………… v

Tex. Penal Code Ann., sec. 22.02(b)(2)(B)…………………………………………… v

Tex. Code Crim. Proc. Ann., art. 1.051…..………………………………………… v

Tex. Code Crim. Proc. Ann., art. 26.04…………………………………………….. 8

Tex. Code Crim. Proc. Ann., art. 46B.004( c ) .…………………………………… 7

Tex. R. App. P. 44.2(b)………………………………………………………… 14

## Other Authority

*George E. Dix & John M. Schmolesky,* 42 Texas Practice and Procedure........................... 8
   Sec. 29.40 (3rd ed. 2011)

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument, because the issue of when a trial court is required to inquire into a defendant's indigency is an important issue of state law that has not been, but should be, decided by this Court. *See* Tex. R. App. P. 66.3(b).

## STATEMENT OF THE CASE

The Appellant was indicted in cause number 1287084 for Aggravated Assault on a Public Servant, alleged to have occurred on or about November 30, 2010. The indictment contained two enhancement paragraphs, thereby subjecting the Appellant to a punishment range of 25-99 years (C.R. at 8); *See* Tex. Penal Code, §§ 22.02(a)(2), 22.02(b)(2)(B), 12.42(d). The jury found the Appellant guilty and assessed his punishment at fifty (50) years confinement (C.R. at 149). A motion for new trial was filed (C.R. at 164), but was overruled by operation of law.

## STATEMENT OF PROCEDURAL HISTORY

On January 22, 2015, in a published opinion, the Fourteenth Court of Appeals affirmed the Appellant's conviction. *Ibarra v. State*, No. 14-13-00337-CR, 2015 WL 293115 (Tex. App.-Houston [14th Dist.] Jan. 22, 2015, no pet. h.). This Court has extended the time to file the Appellant's Petition for Discretionary Review until April 1, 2015, which is the date that this document is being e-filed.

## GROUNDS FOR REVIEW

### GROUND FOR REVIEW ONE

Eight months before trial, the Appellant requested through two written *pro se* motions that his retained attorney be dismissed and that the trial court "appoint the defendant a public defender." In light of such actions by the Appellant, did the Fourteenth Court of Appeals err in holding that the Appellant failed to request a determination of his indigency?

### GROUND FOR REVIEW TWO

Under what circumstances, if any, is a trial court required to make an inquiry into a defendant's indigency?

### GROUND FOR REVIEW THREE

Did the Fourteenth Court of Appeals err in holding that the trial court's refusal to inquire into the Appellant's indigency did not deprive the Appellant his counsel of choice under the Texas and federal constitutions?

**A. Statement of Facts Relative to Grounds for Review**

**1. "Motion to Dismiss Defendant's Attorney of Record Michael K. Slider and Appoint Defendant a Public Defender"**

On August 1, 2012, after nineteen (19) months in continuous custody[2] and more than eight (8) months before trial would take place, Appellant filed (by certified mail to the clerk of the 174th District Court) a *pro se* "Motion to Dismiss Defendant's Attorney of Record Michael K. Slider and Appoint Defendant a Public Defender" (Supp. C.R. at 5-7). According to the motion, Attorney Slider was hired twenty (20) months earlier (which would have been around the time of the Appellant's arrest in late 2010). In his *pro se* motion, Appellant alleged the following:

1) Slider had not had any contact with the Appellant in the seven (7) months preceding the filing of the motion;

2) As of the date that the motion was filed (August of 2012), the only action taken by Slider in the year-and-a-half since he began representing the Appellant was to file a discovery motion;

3) Slider told the Appellant's family that he could not be fired unless the family hired another attorney;

---

[2] *See* Judgment, which lists time credit as "12/28/2010 to 4/11/2013."

4) Slider "told the Defendant that we do not have O.J. Simpson money to pay for experts on forensics and ballistics."

Appellant then concluded the motion by stating that he could not work with Michael Slider, that he believed that he would not receive effective assistance of counsel from Mr. Slider, and that he wanted a "Public Defender" to be appointed.

This motion was ignored by the trial court.

## 2. "Motion for Judge to Disqualify or Recuse Himself"

On August 23, 2012, Appellant filed another *pro se* motion from jail, this one entitled "Motion for Judge to Disqualify or Recuse Himself" (Supp. C.R. at 3-8). Appellant averred in this motion that the trial court must have a bias against him because the court was refusing to address his previous request to fire Michael Slider and appoint a public defender to represent him. In this motion, the Appellant alleged that when he was on the docket on August 20, 2012, he had requested of attorney Slider that he be allowed to appear in front of the judge to present his motion to dismiss Slider to have a public defender appointed instead. The motion also alleges that the Appellant asked the bailiff of the 174th District Court, J.J. Turner, to ask the judge if the Appellant could approach the bench to discuss the previous motion (requesting appointment of a public defender). According to the later motion, Turner did so, but the judge refused to allow the Appellant to be heard on the matter. Finally,

the motion specifies 6 inmate witnesses who could attest to the Appellant's attempts to bring his motion in front of the trial court on August 20, 2012. [3]

This second *pro se* motion was denied by the trial court on October 30, 2012, over two months after it was filed (Supp. C.R. at 7). This motion provided the second complaint in a month that served to indicate to the trial court that the Appellant wished to fire attorney Michael Slider and was asking the Court to appoint a public defender to represent him.

### 3. Pretrial hearing of April 3, 2014

On April 3, 2014, the Appellant was allowed to address the trial court for the first time. The following exchange took place between the Appellant and Judge Jay Burnett, a visiting judge:

> IBARRA: Sir, I would like to make a record. I've been for…since last July of last year, I've been trying to get Mr. Slider off my case. My family hired him. I've been trying to fire him by certified mail with a Motion to Dismiss to Judge Ruben Guerrero and that's been ignored. And Mr. Slider has repeatedly showed up as my attorney. I believe I have a right of choice of counsel and I haven't had it. I've been asking for Mr. Slider to remove himself from my case for different reasons. He's been defective and ineffective in filing proper motions. And, you know, I've been here 24 - two years and four months already. And I've been asking for a speedy trial the whole time and I've been denied my right to a speedy trial.
> THE COURT: Okay. And I do, however, regardless strongly suggest that you somehow work with your attorney on this, but that's up to you.
> IBARRA: No. I've been trying to work with my attorney for too long already. And on the record, he's fired. My family has called him and

---

[3] The court of appeals opinion makes no mention of this motion in its analysis.

fired him. Like I said, I sent him certified mail. I have certified receipt numbers where I sent the letters (II R.R. at 6-8).

At this point, attorney Slider began questioning Ibarra:

> SLIDER: Okay, when I've made those trips, I actually talked to you about preparing the case for trial and going over the offense report and you always shouted. Get away, you're fired. Correct.
> IBARRA: Since July, yes, sir.
> SLIDER: When we're in court and I tried to speak to you in the holdover, you say the same thing: Get away, you're fired. Correct?
> IBARRA: Yes, sir. (II R.R. at 8)

The visiting judge took no action after the above testimony.

## 4. Pretrial hearing of April 4, 2014

The next day, attorney Michael Slider filed a "Motion to Withdraw as Counsel" (Supp. C.R. at 14-15). In the motion, attorney Slider informed the Court that:

1. Appellant failed to pay him his fee;

2. He had a conflict with Appellant;

3. He was not Appellant's attorney of choice;

4. Appellant had refused to talk with him since July of 2012;

5. He conceded that: "The attorney cannot give this defendant effective representation under these circumstances and be effective at trial."

This motion was denied (Supp. C.R. at 16). The next day, attorney Slider filed a motion stating that Appellant needed to be examined by a psychiatrist or medical doctor because "He is refusing to speak to defense counsel, is talking about suicidal

- 5 -

thoughts, cries and mumbles." This motion was denied the day it was filed. (Supp. C.R. at 17).

## B. Appellant's argument at the court of appeals, and that court's opinion

The Appellant complained that his right to appointed counsel under the United States and Texas Constitutions, as well as under article 1.051 of the Texas Code of Criminal Procedure, was violated by the trial court's refusal to inquire of his indigency, and in not then appointing counsel to replace his retained attorney.

In responding to this complaint, the court of appeals replied:

> To the extent appellant complains that the trial court violated his rights under the United States Constitution and the Texas Constitution by failing to appoint counsel to represent him, that complaint lacks merit because a trial court does not have a duty to appoint counsel until the defendant shows he is indigent. *See Gray v. Robinson,* 744 S.W.2d 604, 607 (Tex.Crim.App.1988). A trial court has no duty to appoint counsel when a defendant has "managed to retain counsel" or "has made no showing of indigency." *Id.*; *Easily v. State,* 248 S.W.3d 272, 281 (Tex.App.– Houston [1st Dist.] 2007, pet. ref'd). Neither in his motion, nor in his pre-trial exchange with the trial court, did appellant claim to be indigent, and he made no showing that he was indigent. *See Gray,* 744 S.W.2d at 607.

>          *              *              *

> Appellant also asserts that the trial court should have followed the dictates of Article 1.051(b), (c) and was required to appoint counsel to represent him. That statute provides in pertinent part as follows:

> > (b) ... "indigent" means a person who is not financially able to employ counsel. (c) An indigent defendant is entitled to have an attorney appointed to represent him....

Tex. Code Crim. Proc. Ann. art. 1.051. In the trial court, although appellant requested appointment of counsel, he did not assert he was indigent, make any showing that he was indigent, or request a determination of indigency. A trial court does not have a duty to appoint counsel until the defendant shows he is indigent. *See Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281. Because appellant did not show he was indigent, the trial court was not required by Article 1.051 to appoint counsel to represent him, and thus the trial court did not err in failing to appoint counsel. *See Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281.

Appellant also contends that, after the trial court was made aware counsel was not his attorney of choice and had been fired and that appellant wanted the trial court to appoint counsel, it was the trial court's duty to inquire into whether appellant was indigent, that is, not financially able to employ counsel. The parties have not cited, and research has not revealed, any statute or legal authority addressing this issue. We conclude that appellant has not shown that the trial court erred in failing to inquire as to whether he was indigent. The trial court was not required to conduct an inquiry on its own motion as to whether appellant was indigent. *See Whitehead v. State,* 130 S.W.3d 866, 874 (Tex.Crim.App.2004); *Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281. *Ibarra v. State*, No. 14-13-00337-CR, 2013 WL 177456, at *3-4 (Tex. App.-Houston [14th Dist.] Jan. 22, 2015, no pet. h.).

## C.  Argument Under Grounds for Review

When is a trial court under an obligation to inquire into whether a defendant is indigent? Is raising the issue of indigency analogous to raising the issue of competency, where a trial court is required to "determine by informal inquiry" whether there is some evidence "from any source" that would suggest incompetency? *See* Tex. Code Crim. Proc. Ann., art. 46B.004(c)? Or must a criminal defendant meet specific, more stringent requirements to get the court's attention when he is requesting appointed counsel?

The court of appeals states in its opinion that it can find no statute or legal authority that suggests that a trial court has such a duty when a defendant has fired his counsel and wants a new lawyer. *Opinion,* at \*4. With respect to the precise fact situation presented here, the court may be correct, but Tex. Code Crim Proc. Ann., art. 26.04 ("Procedures for Appointing Counsel") clearly anticipates scenarios where a defendant can no longer afford retained counsel:

> (p) A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs. *If there is a material change in financial circumstances* after a determination of indigency *or nonindigency* is made, *the defendant*, the defendant's counsel, or the attorney representing the state *may move for reconsideration of the determination.*

One authority has suggested that while the Code of Criminal Procedure does not clearly provide for a hearing on indigency, such was likely the intent of the Legislature:

> The Code of Criminal Procedure does not explicitly provide for a hearing on a defendant's assertion of a right to appointed counsel. Undoubtedly, however, the legislature contemplated that defendants seeking representation would have a full opportunity to make their case for eligibility for appointed counsel and—if the matter was discretionary with the court—for a favorable exercise of that discretion.

> Whether the "hearing" must be one in which the defendant is entitled to introduce live testimony is less clear. Given the importance of the right to counsel, a trial judge certainly acts at considerable risk in denying counsel without such a full opportunity for the defendant to be heard. George E. Dix & John M. Schmolesky, 42 Texas Practice: Criminal Practice and Procedure sec. 29.40 (3rd ed. 2011).

In federal court, a situation such as presents itself in this case would require a trial court to inquire into a defendant's indigency. *See U.S. v. Mason,* 2012 WL 2680748 (5th Cir. 2012)(unpublished, per curiam)(District court was required by the Criminal Justice Act (CJA) to inquire into defendant's financial eligibility for appointment of counsel after guilty plea and prior to sentencing, once defendant requested court-appointed counsel and expressed concern that retained counsel did not want to spend too much time with defendant because of defendant's inability to pay promptly; case would be remanded for district court to conduct inquiry and potentially appoint counsel for new sentencing hearing).

The Fourteenth Court of Appeals seems to rest its conclusion that the Appellant's indigency was not sufficiently raised in this case on the fact that he did not specifically assert that he was indigent ("Neither in his motion, nor in his pre-trial exchange with the trial court, did appellant claim to be indigent, and he made no showing that he was indigent." *Ibarra*, at *3).

This conclusion overlooks the following:

1) In terms of alerting the trial court to what he was requesting in his *pro se* motion of August 1, 2012, it must be remembered that the motion was entitled "Motion to Dismiss Defendant's Attorney of Record Michael K. Slider, **and Appoint Defendant a Public Defender**" (emphasis added). When the court of appeals writes "appellant did not assert that he was indigent or submit proof

that he was indigent," the obvious question which arises is this: what else could it mean when a defendant asks a court to "Appoint a Public Defender?"

2) In terms of what it takes to bring the matter of indigency to the attention of the trial judge, when the court of appeals observes that "the appellant asked the trial court to appoint a lawyer to represent him, but appellant did not assert that he was indigent or submit proof that he was indigent," such comment blithely ignores the reality of *pro se* motions in criminal courts and especially *pro se* motions challenging the effectiveness of one's lawyer. The reality, of course, is that the Appellant, confined to a wheelchair due to having been shot four times by police officers (IX R.R. at 8-9), had by August of 2012 been in continuous custody for nineteen (19) months and was confined in the holdover cell whenever he went to court. As with any other *pro se* motion, getting oneself heard by the trial court, especially regarding a matter like discharging your lawyer, depends on either being very vocal with the guards (who may or may not oblige you), or prevailing upon the lawyer you are complaining about to get you brought out of the holdover and in front of the bench so that you can air your grievances about him in front of everyone. Under any scenario, the defendant is entirely subject to the whims of others as to whether he will have any opportunity to "submit proof that he was indigent."

3) When the court of appeals cites *Robinson v.* State, 240 S.W.3d 919 (Tex. Crim. App. 2007) for the proposition that a trial court is free to disregard any

*pro se* motions presented by a defendant who is represented by counsel, it is squarely placing the Appellant in a Catch-22 situation: In order for the court to consider your motion to discharge your retained lawyer and have a public defender appointed to your case heard by the court, you need to submit proof of your indigency. However, good luck with that, because the trial court is not required to consider any *pro se* motion raising these issues.

There is no reason whatsoever to believe that if the Appellant had filed a motion with a sworn affidavit of indigency it would have garnered any more attention than the one he filed, and there is every reason to believe that if the trial court had only given the Appellant a brief hearing on his August 2012 motions, he would have explained exactly what he meant by wanting the court to "appoint a public defender" to his case. Perhaps he would have pursued one issue that was explicitly mentioned in in his August 1, 2012 motion, and which clearly did relate to his financial ability to defend himself, namely, counsel's assertion that there was not enough money to hire experts ("we do not have O.J. Simpson money to pay for expert witnesses."). If counsel told the Appellant that experts could not be afforded, then obviously, counsel was under a misimpression regarding what steps were available if the Appellant could not afford necessary experts. *See Ex parte Briggs*, 187 S.W.3d 458, 468 (Tex. Crim. App. 2005).

The Appellant's *pro se* motion, by its very caption and by the *Ake* issue raised within the motion, was adequate to put the trial court on notice that the Appellant's

indigency had become an issue. Indeed, the fact that the Appellant had, by the time he filed his motion on August 1, 2012, been in custody for nineteen (19) months and was confined to a wheelchair, should have lent some credence to the notion that he was indigent, as his motion suggested.

Finally, by denying the Appellant the option of firing the attorney that had been chosen for him by his family, and determining whether he was eligible for a court-appointed attorney, the trial court effectively denied the Appellant his counsel of choice, in violation of the Sixth Amendment to the United States Constitution and art. I, sec. 10 of the Texas Constitution. The essential aim of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. U.S.*, 486 U.S. 153, 158-59 (1988). However, the Appellant was not requesting a specific attorney over another. He was asking to discharge his attorney, and then, due to his indigency, to be given any public defender that the trial court decided to appoint.

In conclusion, the court of appeals erred in holding that the trial court had no obligation to investigate the Appellant's indigency under these facts, which resulted in the Appellant proceeding to trial with counsel who was not of his choosing, in violation of the federal and state constitutions.

## PRAYER FOR RELIEF

For the reasons stated above, the Appellant moves that this Court grant his petition and reverse the judgment of conviction in this case, and remand the case for a new trial.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas


/s/ Bob Wicoff
**Bob Wicoff**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th floor
Houston Texas 77002
(713) 274-6781
TBA No. 21422700

Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2015, a copy of the foregoing petition has been served electronically on Alan Curry, who is the chief of the appellate division of the Harris County District Attorney's Office, through the efile system, and on the State Prosecuting Attorney.


/s/ Bob Wicoff

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e) and 9.4(i). It contains **3,045** words printed in a proportionally spaced typeface using Garamond 14 point font.

/s/ Bob Wicoff

# A P P E N D I X

**Opinion in *Ibarra v. State*, No. 14-13-00337-CR,
2015 WL 293115 (Tex. App.-Houston [14th Dist.] Jan. 22, 2015, no pet. h.)**

**2015 WL 293115**
Only the Westlaw citation is currently available.
OPINION
Court of Appeals of Texas,
Houston (14th Dist.

Jamie Alberto Ibarra, Appellant
v.
The State of Texas, Appellee

NO. 14–13–00337–CR | Opinion filed January 22, 2015

**Synopsis**
**Background:** Defendant was convicted in the 174th District Court, Harris County, of aggravated assault on public servant. Defendant appealed.

**Holdings:** The Court of Appeals, John Donovan, J., held that:

[1] defendant was not denied his federal and state constitutional rights to counsel of his choice;

[2] trial court did not abuse its discretion in denying motion by defense counsel to withdraw;

[3] trial court was not obligated under criminal procedure article to appoint counsel for defendant who made no showing that he was indigent nor requested determination of indigency;

[4] trial court had no obligation under criminal procedure article, upon learning of defendant's dissatisfaction with and alleged termination of his retained counsel, to sua sponte inquire into defendant's indigency;

[5] defendant was not prejudiced by defense counsel's failure to object to testimony of juvenile probation officer about her interview with defendant when he was juvenile and information contained in Juvenile Offense Tracking (JOT) report;

[6] defendant's statements, as juvenile, to juvenile probation officer during interview were not made in course of interrogation, within meaning of Family Code governing statements made during interrogation; and

[7] prosecutor's comments during closing argument of punishment phase regarding information related to defendant's prior juvenile adjudications of delinquency noted in JOT report were not outside scope of permissible argument.

Affirmed.

West Headnotes (18)

**[1]** **Criminal Law**
Withdrawal by Counsel

Defendant was not denied his federal and state constitutional rights to counsel of his choice when trial court denied defense counsel's motion to withdraw and refused to appoint counsel from public defender's office, in trial for aggravated assault on public servant, despite multiple expressions of dissatisfaction with counsel and refusal to communicate with counsel; there was no indication that defendant or his family took any steps to retain another attorney to represent defendant, despite opportunity to do so, defendant never informed trial court that he could no longer afford to retain lawyer, he did not express desire to represent himself, and he was not entitled to have counsel appointed absent showing that he was indigent. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[2]** **Criminal Law**
Choice of Counsel

An element of the constitutional right to assistance of counsel is the right of a defendant who does not require appointed counsel to choose who will represent him; however, this right is not absolute. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[3]**     **Criminal Law**
    Choice of Counsel

A defendant has no right to be represented by an advocate who is not a member of the bar, an attorney whom he cannot afford or whom declines to represent him, or an attorney who has a previous or ongoing relationship with an opposing party. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[4]**     **Criminal Law**
    Choice of Counsel

While there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice; nonetheless, when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose retained counsel, its actions rise to the level of a constitutional violation. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[5]**     **Criminal Law**
    Indigence

A trial court does not have a duty to appoint counsel until the defendant shows he is indigent. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[6]**     **Criminal Law**
    Withdrawal by Counsel

Trial court did not abuse its discretion in denying motion by defense counsel to withdraw, in trial for aggravated assault of public servant, given counsel having filed motion to withdraw less than one week prior to trial, length of time that case had been pending, and defendant's failure to take steps to retain another lawyer.

Cases that cite this headnote

**[7]**     **Criminal Law**
    Withdrawal by Counsel

The trial court has discretion to determine whether counsel's withdrawal should be granted, balancing the matters asserted with the potential for obstruction to the judicial process or interference with the administration of justice.

Cases that cite this headnote

**[8]**     **Criminal Law**
    Indigence

Trial court was not obligated under criminal procedure article to appoint counsel for defendant who made no showing that he was indigent, nor requested determination of indigency. Tex. Crim. Proc. Code Ann. art. 1.051(b, c).

Cases that cite this headnote

**[9]**     **Criminal Law**
    Indigence

Trial court had no obligation under criminal procedure article, upon learning of defendant's dissatisfaction with and alleged termination of his retained counsel, to sua sponte inquire into defendant's indigency, for purposes of defendant's request for appointed counsel. Tex. Crim. Proc. Code Ann. art. 1.051.

Cases that cite this headnote

**[10]** **Criminal Law**
🔑Conduct of Trial in General

On a claim of ineffective assistance of counsel where there is no record explaining the underlying reasons for counsel's conduct, the reviewing court will not speculate about them. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[11]** **Criminal Law**
🔑Presumptions and burden of proof in general

The presumption that counsel's actions were reasonably professional and motivated by sound trial strategy is not rebutted where the record is silent as to counsel's rationale for his trial strategy. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[12]** **Criminal Law**
🔑Conduct of Trial in General

An appellate court will not find ineffective assistance of counsel when the record is silent as to counsel's rationale for trial strategy unless counsel's conduct was so outrageous that no competent attorney would have engaged in it. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[13]** **Criminal Law**
🔑Counsel for accused

While the general rule is an alleged error must be first brought to the attention of the trial court before it can be heard on appeal, an ineffective-assistance-of-counsel claim will generally not be

foreclosed because of an appellant's inaction at trial. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[14]** **Criminal Law**
🔑Presentation of evidence regarding sentencing

Defendant was not prejudiced by defense counsel's failure to object to testimony of juvenile probation officer about her interview with defendant when he was juvenile, specifically about information contained in Juvenile Offense Tracking (JOT) report that she had reviewed prior to interview regarding his involvement in robbery during which he had pointed gun at victim, and officer's testimony that it appeared to her that defendant had not taken robbery charge very seriously because gun had not been loaded, in alleged violation of hearsay rules, as required to support claim of ineffective assistance of counsel, in punishment phase of trial for aggravated assault of public servant, given admission of defendant's prior convictions and admission of evidence from guilt phase of trial. U.S. Const. Amend. 6; Tex. Const. art. 1, § 10.

Cases that cite this headnote

**[15]** **Infants**
🔑Interrogation and Investigatory Questioning

Defendant's statements, as juvenile, to juvenile probation officer during interview after officer reviewed Juvenile Offense Tracking (JOT) report about robbery that he had been involved in were not made in course of interrogation, within meaning of Family Code statute providing that statements of child were not inadmissible if statement did not stem from interrogation. Tex. Fam. Code Ann. § 51.095(b)(1), (2).

Cases that cite this headnote

[16]  **Criminal Law**
🔑 In particular prosecutions

Prosecutor's comments during closing argument of punishment phase regarding information related to defendant's prior juvenile adjudications of delinquency noted in Juvenile Offense Tracking (JOT) reports were not outside scope of permissible argument, in sentencing for aggravated assault of public servant, where evidence of prior juvenile history was admitted and jury was asked to consider defendant's criminal history in assessing punishment.

Cases that cite this headnote

[17]  **Criminal Law**
🔑 Scope of and Effect of Summing up

Closing arguments are made to assist the jury in its analysis of the evidence presented at trial in order to reach a just determination.

Cases that cite this headnote

[18]  **Criminal Law**
🔑 Comments on Evidence or Witnesses
**Criminal Law**
🔑 Inferences from and Effect of Evidence
**Criminal Law**
🔑 Comments on frequency of offenses, and appeals for law enforcement
**Criminal Law**
🔑 Rebuttal Argument; Responsive Statements and Remarks

Jury argument may encompass a summation of the evidence, reasonable deductions which can be drawn from the evidence, answers to opposing counsel's argument, and a plea for law enforcement.

Cases that cite this headnote

**On Appeal from the 174th District Court, Harris County, Texas, Trial Court Cause No. 1287084**

**Attorneys and Law Firms**

Bob Wicoff, Houston, TX, for Appellant.

Carly Dessauer, Houston, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

**OPINION**

John Donovan, Justice

**\*1** Appellant, Jamie Alberto Ibarra, appeals his conviction for aggravated assault on a public servant, contending he was denied his right to counsel of his choice, and he received ineffective assistance of counsel. We affirm.

**I. BACKGROUND**

According to the record evidence, in November 2010, appellant arrived at the home of Martha Maldonado to see her daughter, Michell Mares, with whom appellant previously had a relationship. When Maldonado told appellant that Mares was not home, appellant continued knocking on the door, insisting on seeing Mares. Because appellant had exhibited harassing behavior in the past, Maldonado called the police.

When two police officers arrived at Maldonado's home, they observed appellant on the porch, using a cell phone. Appellant stood, removed a handgun from his pocket, and pointed it at his head. Both officers drew their weapons and, while attempting to calm appellant, they moved near their patrol car to seek cover. Appellant refused to put down his gun, and he ran away from the house, hiding behind a truck in a nearby parking lot. Backup officers arrived. Appellant stated he would not put the gun down unless he went down with it, and he fired the gun at an officer who was moving to a secure location in the parking lot. The shot did not hit the officer. A police SWAT team arrived, following appellant as he jumped the fence of the parking lot and ran to another location, breaking into a truck. Appellant was shot and injured after pointing his gun at one of the SWAT team officers.

A jury found appellant guilty of the first-degree felony offense of aggravated assault against a public servant,[1] and found two enhancement paragraphs to be true. The jury assessed punishment at fifty years' confinement.

## II. COMPLAINTS REGARDING COUNSEL OF APPELLANT'S CHOICE

[1]In his first issue and second issues, appellant contends he was denied the right to counsel of his choice under the United States Constitution and the Texas Constitution.

About eight months before the case proceeded to trial in April 2013, appellant filed a handwritten "Motion to Dismiss Defendant's Attorney of Record, ... and Appoint Defendant a Public Defender," alleging he "employed [counsel] some 20 months previous to the date of the filing of this motion." Appellant further asserted counsel had failed to provide "reasonably effective assistance" because appellant had no contact with counsel in the past seven months, and that counsel had "taken no affirmative action to preserve and to protect the valuble (sic) rights of the Defendant." Appellant's motion alleged counsel told him, "we do not have O.J. Simpson money to pay for expert witnesses on forensic's (sic) and ballistics." Appellant did not notify the trial court he was indigent or without the financial ability to obtain counsel. Appellant requested the trial court dismiss retained counsel and "appoint a new counsel/Public Defender to act in (sic) behalf of Defendant." The record does not contain an order in which the trial court disposed of this motion.[2]

**\*2** The week prior to trial, appellant asked to make a record to renew his complaints regarding counsel, asserting (1) appellant had been asking for counsel to remove himself from the case, (2) appellant's counsel had been "defective and ineffective in filing proper motions," and (3) appellant had been requesting but had been denied a right to a speedy trial, and he had not "been treated fair." Appellant complained he had been working with retained counsel "for too long already" and "on the record, he's fired. My family has called him and fired him." Counsel questioned appellant who admitted there had been numerous trial dates (over a dozen resets), he had refused to speak with counsel for almost a year, he had refused to sign trial reset forms, and he had continually ordered counsel to "Get away, you're fired." The trial court advised appellant to work with counsel and confirmed retained counsel would continue to represent appellant for purposes of trial.

Counsel for appellant filed a written motion to withdraw four days prior to trial, which was heard by the trial court the same day. The trial court noted the case had been pending for a very long time and was preferentially set, made a finding that appellant refused to cooperate with counsel, and denied the motion.

Appellant asserts here he was deprived of his constitutional "right to counsel of his choice" because the counsel his family hired was not of his choice, and the trial court should have appointed different counsel.

### A. Complaint under the United States and Texas Constitutions

[2]  [3]The Sixth Amendment to the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to have assistance of counsel. *See* U.S. Const., amend. VI (providing, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... and to have the assistance of counsel for his defense"); Tex. Const. art. I, § 10 (providing, "In all criminal prosecutions the accused shall have a speedy public trial ... and shall have the right of being heard by himself or counsel or both...."); Tex. Code Crim. Proc. Ann. art. 1.05 (West, Westlaw through 2013 3d C.S.); *Gonzalez v. State,* 117 S.W.3d 831, 836–37 (Tex.Crim.App.2003). An element of this constitutional right to assistance of counsel is the right of a defendant who does not require appointed counsel to choose who will represent him. *See United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006); *Gonzalez,* 117 S.W.3d at 836–37. But, this right is not absolute. *See Gonzalez–Lopez,* 548 U.S. at 144, 126 S.Ct. at 2561; *Gonzalez,* 117 S.W.3d at 837; *see also Wheat v. U.S.,* 486 U.S. 153, 158–59, 108 S.Ct. 1692, 1697–98, 100 L.Ed.2d 140 (1988) ("[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). For example, a defendant has no right to be represented by an advocate who is not a member of the bar, an attorney whom he cannot afford or whom declines to represent him, or an attorney who has a previous or ongoing relationship with an opposing party. *See Gonzalez,* 117 S.W.3d at 837.

[4]While there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice. *Id.*; *see also Gonzalez–Lopez,* 548 U.S. at 152, 126 S.Ct.

at 2566–67 (stating "[w]e have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.") (citations omitted); *Ex parte Windham,* 634 S.W.2d 718, 720 (Tex.Crim.App.1982) (listing factors to be weighed in balancing defendant's right to retained counsel of choice against trial court's need for prompt and efficient administration of justice). Nonetheless, when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose retained counsel, its actions rise to the level of a constitutional violation. *See Gonzalez,* 117 S.W.3d at 837.

**\*3** In the case under review, appellant's family apparently retained a lawyer on his behalf to represent him. In his motion to dismiss, and at several hearings, appellant expressed dissatisfaction with this lawyer and a desire to terminate this lawyer's representation of appellant. The record also reflects that appellant refused on various occasions to communicate with his lawyer about his case. Nonetheless, the record does not reflect that appellant or any other person on his behalf took any steps to retain another lawyer to represent appellant. Appellant did not request additional time to attempt to retain another lawyer, nor did appellant state that he no longer could afford retained counsel. Appellant did not express any desire to represent himself. Instead, appellant asked the trial court to appoint a lawyer to represent him, but appellant did not assert that he was indigent or submit proof that he was indigent. Appellant had an opportunity to retain a different lawyer, and appellant had no right to be represented by a court-appointed lawyer of his choosing. *See Gonzalez–Lopez,* 548 U.S. at 151, 126 S.Ct. at 2565; *Dunn v. State,* 819 S.W.2d 510, 520 (Tex.Crim.App.1991); *see also Robinson v. State,* 240 S.W.3d 919, 922 (Tex.Crim.App.2007) (holding a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel). We conclude that the trial court did not unreasonably or arbitrarily interfere with appellant's right to choose retained counsel. *See Gonzalez,* 117 S.W.3d at 837–46.

**[5]** To the extent appellant complains that the trial court violated his rights under the United States Constitution and the Texas Constitution by failing to appoint counsel to represent him, that complaint lacks merit because a trial court does not have a duty to appoint counsel until the defendant shows he is indigent. *See Gray v. Robinson,* 744 S.W.2d 604, 607 (Tex.Crim.App.1988). A trial court has no duty to appoint counsel when a defendant has "managed to retain counsel" or "has made no showing of indigency." *Id.*; *Easily v. State,* 248 S.W.3d 272, 281 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd). Neither in his motion, nor in his pre-trial exchange with the trial

court, did appellant claim to be indigent, and he made no showing that he was indigent. *See Gray,* 744 S.W.2d at 607.

## B. Complaint under the Texas Code of Criminal Procedure

**[6]** Under his second issue, appellant also complains the trial court erred in refusing to allow his counsel to withdraw, not inquiring of his indigency, and not appointing counsel under Texas Code of Criminal Procedure Article 1.051. *See* Tex. Code Crim. Proc. Ann. art. 1.051 (West 2014).

**[7]** We apply an abuse of discretion standard to determine whether the trial court erred in denying appellant's counsel motion to withdraw. *King v. State,* 29 S.W.3d 556, 566 (Tex.Crim.App.2000). If the ruling falls within the "zone of reasonable disagreement," we must affirm the trial court. *See Gonzalez,* 117 S.W.3d at 836–37; *Hobbs v. State,* 359 S.W.3d 919, 926 (Tex.App.–Houston [14th Dist.] 2012, no pet.). The trial court has discretion to determine whether withdrawal should be granted, balancing the matters asserted with the potential for obstruction to the judicial process or interference with the administration of justice. *King,* 29 S.W.3d at 566; *see also Coleman v. State,* 246 S.W.3d 76, 86 (Tex.Crim.App.2008) (approving of denial of change in counsel where delay in the administration of justice would have resulted). Appellant's counsel filed a motion to withdraw less than a week before trial. Given the proximity of the trial setting, the length of time the case had been pending, and appellant's failure to take steps to retain another lawyer or submit proof of indigency, the trial court did not abuse its discretion in denying counsel's motion to withdraw. *See King,* 29 S.W.3d at 566; *Hobbs,* 359 S.W.3d at 926–27.

**[8]** Appellant also asserts that the trial court should have followed the dictates of Article 1.051(b), (c) and was required to appoint counsel to represent him. That statute provides in pertinent part as follows:

> (b) ... "indigent" means a person who is not financially able to employ counsel." (c) An indigent defendant is entitled to have an attorney appointed to represent him....

Tex. Code Crim. Proc. Ann. art. 1.051. In the trial court, although appellant requested appointment of counsel, he did not assert he was indigent, make any showing that he was indigent, or request a determination of indigency. A

trial court does not have a duty to appoint counsel until the defendant shows he is indigent. *See Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281. Because appellant did not show he was indigent, the trial court was not required by Article 1.051 to appoint counsel to represent him, and thus the trial court did not err in failing to appoint counsel. *See Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281.

**\*4** [9]Appellant also contends that, after the trial court was made aware counsel was not his attorney of choice and had been fired and that appellant wanted the trial court to appoint counsel, it was the trial court's duty to inquire into whether appellant was indigent, that is, not financially able to employ counsel. The parties have not cited, and research has not revealed, any statute or legal authority addressing this issue. We conclude that appellant has not shown that the trial court erred in failing to inquire as to whether he was indigent. The trial court was not required to conduct an inquiry on its own motion as to whether appellant was indigent. *See Whitehead v. State,* 130 S.W.3d 866, 874 (Tex.Crim.App.2004); *Gray,* 744 S.W.2d at 607; *Easily,* 248 S.W.3d at 281.

Having rejected the arguments under appellant's first and second issues, we overrule these issues.

## II. CLAIM REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, appellant contends he was denied effective assistance of counsel at the punishment phase of the trial.

### A. Standard of review and applicable law

To prevail on an ineffective-assistance claim, appellant must establish (1) trial counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2065–2067, 80 L.Ed.2d 674 (1984); *see Hernandez v. State,* 726 S.W.2d 53, 55–57 (Tex.Crim.App.1986) (holding *Strickland* standard applies to ineffective-assistance claims under Texas Constitution).

We indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional

behavior and were motivated by sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Thus "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Thompson,* 9 S.W.3d at 812. The presumption is overcome only when evidence of ineffective assistance is "firmly founded and affirmatively demonstrated in the record." *Melancon v. State,* 66 S.W.3d 375, 378 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd) (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)). The totality of the representation is the appropriate context; counsel is not to be judged on isolated portions of his representation. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Our review of counsel's performance is highly deferential, beginning with the strong presumption counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

[10] [11] [12] [13]Where there is no record explaining the underlying reasons for counsel's conduct, we will not speculate about them. *Perez v. State,* 56 S.W.3d 727, 731 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd) (citing *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.–Houston [1st Dist.] 1996, no pet.)); *see also Ex parte Varelas,* 45 S.W.3d 627, 632 (Tex.Crim.App.2001).[3] The presumption is not rebutted where the record is silent as to counsel's rationale for his trial strategy. *Perez,* 56 S.W.3d at 732. We will not find ineffective assistance unless counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005).

### B. Analysis
**\*5** Appellant contends his counsel performed deficiently in two respects: (1) by failing to object to the testimony of Cynthia Glenn, a juvenile probation officer for Harris County, and (2) failing to object to purportedly improper jury argument.

### 1. Failure to object to Glenn's testimony
[14]Glenn testified that, in her role as a juvenile probation officer, she interviews juveniles to obtain a sense of their family and school dynamic. She reviews the juvenile offense tracing ("JOT") reports to understand what occurred with the juveniles and what they understood. She does not interview them about guilt or innocence. The interviews help determine if the juvenile should be certified as an adult relative to the charges.

In 1997, Glenn reviewed appellant's JOT concerning a robbery in which he was involved. At that interview, Glenn learned appellant pointed a gun at someone to commit a robbery of a bicycle and other property. Appellant stated on the day of the 1997 arrest he was "high on marijuana" and had "drunk some alcohol." Prior to this arrest, appellant had been arrested for marijuana possession. Appellant admitted he associated with the Barrio Denver Harbor Click gang. Glenn recalled appellant did not appear to be taking the robbery charge seriously; he stated the gun used in the robbery was not loaded, so it did not appear to Glenn that his actions were serious or important to him.

First, appellant urges it was "elementary" that Glenn could not "admissibly read" from a juvenile offense report, and it was improper to allow testimony from her about her conversations with appellant. *See* Tex. R. Crim. App. Evid. 801, 802. Even if this testimony were improper and would have been excluded upon the objection of appellant's counsel, in light of evidence of appellant's prior convictions[4] and the evidence offered in the guilt-innocence phase, which was also admitted in the punishment phase,[5] we conclude that appellant has not shown that there is a reasonable probability that the result of the punishment phase would have been different if this testimony had not been admitted.

[15]Next, appellant contends counsel should have asked for a hearing to test the admissibility under Texas Family Code Section 51.095 of appellant's statements to Glenn. *See* Tex. Fam. Code § 51.095(b)(1), (2) (West 2011). Statements of a child are not considered inadmissible if the statement does not stem from an interrogation or, if voluntary and they have a bearing on the credibility of the child as a witness, or if recorded. *See id.* Appellant has not shown these statements were inadmissible. Glenn's testimony suggests the statements were made in the

context of an interview. There was no suggestion of custodial interrogation. *See Payne v. State,* 579 S.W.2d 932, 933 (Tex.Crim.App. [Panel Op.] 1979) (holding statements made when not in custody are admissible).

**2. Failure to object to jury argument**

**\*6** [16]Lastly, appellant complains counsel failed to object during closing argument when the State mentioned information related to prior convictions in the juvenile offense reports.

[17] [18]Closing arguments are made to assist the jury in its analysis of the evidence presented at trial in order to reach a just determination. *See Temple v. State,* 342 S.W.3d 572, 602–603 (Tex.App.–Houston [14th Dist.] 2010), *aff'd* 390 S.W.3d 341 (Tex.Crim.App.2013). Jury argument may encompass a summation of the evidence, reasonable deductions which can be drawn from the evidence, answers to opposing counsel's argument, and a plea for law enforcement. *Id.* (citing *Brown v. State,* 270 S.W.3d 564, 570 (Tex.Crim.App.2008)). The record reveals the prosecutor properly summarized the evidence adduced at trial, asked the jury to consider appellant's criminal background in assessing punishment, and responded to opposing counsel's argument. An attorney's failure to object to proper argument cannot be ineffective assistance. *See Richards v. State,* 912 S.W.2d 374, 379 (Tex.App.–Houston [14th Dist.] 1995, pet. ref'd).

In summary, having rejected all of appellant's ineffective-assistance claims, we overrule his third issue.

We affirm the trial court's judgment.

Footnotes

1    See Tex. Penal Code Ann. §§ 22.01(a)(2), (b)(1); 22.02(a)(2), (b)(2)(B) (West 2011) (providing that person commits aggravated assault, as a first-degree felony, if he intentionally and knowingly threatens with imminent bodily injury a person the actor knows is a public servant, while the public servant is lawfully discharging an official duty, and the actor uses or exhibits a deadly weapon).

2    Appellant attempted to appeal the orders denying motions to recuse in Cause Nos. 14–12–01152–CR and 14–12–00152–CR, which we dismissed because they were interlocutory. In his appellate brief, appellant makes no complaint about them.

3    Appellant did not raise in his motion for new trial the ineffective-assistance claim. While the general rule is an alleged error must be first brought to the attention of the trial court before it can be heard on appeal, an ineffective-assistance claim will generally not be foreclosed because of an appellant's inaction at trial. *See Robinson v. State,* 16 S.W.3d 808, 809 (Tex.Crim.App.2000).

4    1997 robbery (sentence of two years in TDC), 1999 misdemeanor possession of marijuana, and criminal trespass, 2000 misdemeanor possession of marijuana, 2004 felony possession of over 400 grams of cocaine (sentence of 15 years in TDC), and

2011 misdemeanor trespass.

5    Evidence included appellant's harassment of Maldonado, pointing his gun at and running away from police officers, disobeying their orders, firing his gun, and his inability or refusal to take advantage of numerous offers of second chances.

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.